**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 3 1997**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

DEBBIE L. SMITH,

     Plaintiff-Appellee/
     Cross-Appellant,

v.

NORWEST FINANCIAL
ACCEPTANCE, INC., an Iowa
corporation; CURTIS MANGUS;
NORWEST FINANCIAL WYOMING,
INC., a Wyoming corporation; and
NORWEST FINANCIAL, INC., an Iowa
corporation,

     Defendants-Appellants/
     Cross-Appellees.

Nos. 96-8103
     96-8111

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(D.C. No. 95-CV-1043)

---

Dirk W. deRoos (Jo Frances Walsh with him on the briefs) of Faegre & Benson LLP,
Denver, Colorado, for Defendants-Appellants/Cross-Appellees.

Les Bowron (Frank R. Chapman with him on the brief) of Beech Street Law Offices,
Casper, Wyoming, for Plaintiff-Appellee/Cross-Appellant.

---

Before **BRORBY**, **BARRETT**, and **McKAY**, Circuit Judges.

_____

**McKAY**, Circuit Judge.

_____

Plaintiff Debbie Smith brought a sexual harassment hostile work environment claim pursuant to Title VII of the Civil Rights Act of 1994, 42 U.S.C. § 2000e, et seq., against Defendants Norwest Financial Wyoming, Inc., a Wyoming Corporation; Norwest Financial, Inc., an Iowa corporation; and Mr. Curtis Mangus, an individual (Defendants). The advisory jury returned a verdict for Plaintiff, and the district court entered a judgment for Plaintiff for $270,000 in compensatory damages for emotional distress and $89,000 in lost future fringe benefits, totaling $359,000. The district court then granted Defendants' Motion to Alter or Amend Judgment, reducing the compensatory damages award to $200,000, the statutory cap under 42 U.S.C. § 1981(a), and setting aside the advisory jury verdict for $89,000 in fringe benefits. The district court denied Defendants' Motion for Judgment as a Matter of Law, or in the Alternative, a New Trial, and their Motion for Remittitur, and awarded Plaintiff $93,507.31 in combined costs and attorney's fees pursuant to 42 U.S.C. § 2000e-5(k). Defendants appeal the denial of their post-trial motions and the district court's order for damages and attorney's fees and costs. Plaintiff cross-appeals the district court's denial of her Motion for Sanctions against Defendants' conduct at the pretrial settlement conference.

## I.

This case arises out of the employment of Plaintiff by Norwest Financial Wyoming, Inc. and Norwest Financial, Inc. (Norwest) from February 1993 to January 1995. While at Norwest, Plaintiff worked as an accounts service representative under the supervision of Defendant Mr. Mangus. The Casper, Wyoming, office employed one part-time female employee and only five full-time employees, namely Plaintiff, Mr. Mangus, and three other men. The employees shared a small open space without partitions or privacy. Plaintiff alleged that she was subjected to a hostile work environment based on offensive and sexually harassing comments made by Mr. Mangus during her employment. Plaintiff's claim rested primarily on six statements directed at her and frequently made within earshot of her co-workers. In October 1994, Plaintiff complained to her district manager about Mr. Mangus' harassing statements. Plaintiff resigned from Norwest in January 1995 and began work as a bookkeeper with a Casper furniture company. She filed this action after pursuing her claim with the Equal Employment Opportunity Commission.

## II.

Defendants appeal the district court's denial of their Motion for Judgment as a Matter of Law on Plaintiff's hostile work environment claim. They argue that the statements made to Plaintiff over the course of her employment were neither sufficiently severe nor pervasive to create a hostile work environment. We review *de novo* the district

court's legal conclusion that the conduct was sufficiently severe or pervasive to constitute a hostile work environment. Mason v. Oklahoma Turnpike Auth., 115 F.3d 1442, 1450 (10th Cir.), aff'd, 124 F.3d 217 (10th Cir. 1997). Applying that standard, we must view the evidence most favorably to the nonmoving party and will reverse only "if 'there is no legally sufficient evidentiary basis . . . with respect to a claim or defense . . . under the controlling law.'" Id. (citing Harolds Stores, Inc. v. Dillard Dep't Stores, Inc., 82 F.3d 1533, 1546-47 (10th Cir.) (citations omitted), cert. denied, ___U.S.___, 117 S. Ct. 297 (1996)).

Title VII prohibits an employer from discriminating against an employee on the basis of sex "with respect to [her] compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). This prohibition proscribes sexual harassment in the workplace. See Harrison v. Eddy Potash, Inc., 112 F.3d 1437, 1442 (10th Cir. 1997), petition for cert. filed, 66 U.S.L.W. 3137 (U.S. Aug. 6, 1997) (No. 97-232); Hirschfeld v. New Mexico Corrections Dep't, 916 F.2d 572, 575 (10th Cir. 1990). Hostile work environment harassment occurs when unwelcome sexual conduct "'unreasonably interfer[es] with an individual's work performance or creat[es] an intimidating, hostile, or offensive working environment.'" Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986) (quoting 29 C.F.R. § 1604.11(a)(3)). Meritor states that "[f]or sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working

4

environment.'" Id. at 67 (citation omitted). The mere utterance of a statement which "'engenders offensive feelings in an employee' would not affect the conditions of employment to [a] sufficiently significant degree to violate Title VII." Id. (quoting Rogers v. EEOC, 454 F.2d 234, 238 (5th Cir. 1971), cert. denied, 406 U.S. 957 (1972)).

Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993), clarified the elements of a claim for gender discrimination resulting from a hostile work environment. The Supreme Court held that conduct within the purview of Title VII must be severe or pervasive enough to create both "an objectively hostile or abusive work environment--an environment that a reasonable person would find hostile"--and an environment the victim-employee subjectively perceives as abusive or hostile. Id. at 21-22. We determine whether an environment is "hostile" or "abusive" by looking at the totality of circumstances, such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; . . . whether it unreasonably interferes with an employee's work performance"; and the context in which the conduct occurred. Id. at 23. Additionally, the Court specifically noted that any relevant factor "may be taken into account, [but] no single factor is required." Id.

The Meritor test is a disjunctive one, requiring that the harassing conduct be sufficiently pervasive *or* sufficiently severe to alter the terms, conditions, or privileges of Plaintiff's employment. We address the severity of the harassing conduct in this case first. Plaintiff must demonstrate that the harassment is severe under both the subjective

5

and objective requirements of Harris. See id. at 21-22. First, Plaintiff must subjectively believe that Mr. Mangus' conduct was so severe that it created an abusive or hostile environment. We review for clear error the court's factual finding that this subjective test was met. Trotter v. Todd, 719 F.2d 346, 348 (10th Cir. 1983).

Plaintiff testified that she felt humiliated and upset by the hostile nature of her supervisor's statements. Although her claim of constructive discharge did not proceed past the stage of summary judgment, Plaintiff presented evidence that she left her job at Norwest because she found the working environment hostile and was unhappy and uncomfortable in that environment. Further, contrary to Defendants' assertion, Plaintiff is not required to prove that her tangible productivity or work performance declined or that her ability to do her job was impaired by Mr. Mangus' behavior. See Harris, 510 U.S. at 23 (stating that no single factor is required as long as the environment is hostile or abusive); Dey v. Colt Constr. & Dev. Co., 28 F.3d 1446, 1454-55 (7th Cir. 1994); Davis v. Monsanto Chem. Co., 858 F.2d 345, 349 (6th Cir. 1988), cert. denied, 490 U.S. 1110 (1989). It is sufficient that Plaintiff's testimony reflects that Mr. Mangus' comments were intolerable, publicly made, and caused humiliation and a loss of self-respect. In Plaintiff's mind, Mr. Mangus' conduct created a hostile work environment and altered the conditions or privileges of her employment. Our review of the record indicates that the district court did not err; the subjective component was established.

Second, the harassing conduct must be sufficiently severe that a reasonable person would find the work environment hostile or abusive. We review this objective test, a legal conclusion, *de novo*. E.E.O.C. v. Wiltel, Inc., 81 F.3d 1508, 1513 (10th Cir. 1996). We conclude that the record evidence supports this element. Two of Plaintiff's male co-workers testified that Mr. Mangus' conduct was "sexually inappropriate," "offensive," and "intimidating." Appellants' App., Vol. I at 271; Vol. II at 414. One witness also testified that Mr. Mangus' conduct had an impact on the office, and that when Mr. Mangus would make one of his remarks, "[i]t was obvious in [Plaintiff's] work. Her numbers would drop off and that type of thing." Id., Vol. I at 258. This evidence supports the court's conclusion that a reasonable person would find the sexual harassment severe and the work environment therefore hostile or abusive.

Additionally, we can aggregate evidence of racial hostility with evidence of sexual hostility to establish a hostile work environment. See Hicks v. Gates Rubber Co., 833 F.2d 1406, 1416-17 (10th Cir. 1987) [Hicks I]. At least three of Mr. Mangus' sexually disparaging remarks directed at Plaintiff were severe enough to affect a reasonable person's identity as a woman. He told Plaintiff (1) to "get a little this weekend" so she would "come back in a better mood," Appellants' App., Vol. I at 166, 249, 309; (2) that Plaintiff "would be the worst piece of ass that I ever had," id. at 166, 324; and (3) that Plaintiff "must be a sad piece of ass" who "can't keep a man," id. at 166, 254, 315. The record also reveals that at least one of Mr. Mangus' comments, "[Plaintiff] would find a

7

decent man if [she] just quit dating Mexicans," id. at 166, 311, was racially degrading. The aggregate sexual and racial animus directed toward Plaintiff emphasizes our point: The cumulative evidence of severity was sufficient for the court to conclude that a reasonable person would find Plaintiff's work environment hostile or abusive.

The law also requires us to consider all the circumstances relevant to the discrimination to determine if the conduct was sufficiently severe to constitute a hostile work environment. See Harris, 510 U.S. at 23; Hicks I, 833 F.2d at 1416. Therefore, we examine the setting and context in which the discriminatory behavior occurred. The record indicates that Plaintiff was subjected to Mr. Mangus' comments in the intimate setting of her Casper, Wyoming, office. Because the office was a relatively small, open space without partitions or walls, Plaintiff's co-workers could hear Mr. Mangus' remarks and occasionally witness his treatment of Plaintiff. This public setting only increased the humiliation, and, therefore, the severity of the discriminatory conduct. That Plaintiff herself engaged in casual joking in the office does not negate the harshness of the harassing treatment doled out by Mr. Mangus. This is not a factual scenario like that in Gross v. Burggraf Construction Co., 53 F.3d 1531, 1538 (10th Cir. 1995), where the rough and tumble surroundings of the construction industry can make vulgarity and sexual epithets common and reasonable conduct. See also Sauers v. Salt Lake County, 1 F.3d 1122, 1126 (10th Cir. 1993) (affirming district court finding that plaintiff "'accepted'" the "'unusually rough, sexually explicit and raw atmosphere'" of the Salt

8

Lake County Attorney's Office) (citation omitted). Additionally, the invective imposed by Mr. Mangus was directed solely at Plaintiff.[1] This may be a relevant factor in determining a hostile work environment. See Winsor v. Hinckley Dodge, Inc., 79 F.3d 996, 1000-01 (10th Cir. 1996) (sexual statements not made to plaintiff's co-workers). Upon a careful review of the record, we conclude that when construed in the light most favorable to Plaintiff, the evidence provides a legally sufficient basis for a finding of severe sexual harassment that translated into a hostile work environment. The district court did not err by concluding that Mr. Mangus' conduct was sufficiently severe to create a hostile work environment.

Defendants also contend that the evidence was insufficient to establish pervasive harassment because Plaintiff did not produce evidence of a steady barrage of sexual comments. Defendants are correct in their assertion that isolated incidents of harassment, while inappropriate and boorish, do not constitute pervasive conduct. See Bolden v. PRC Inc., 43 F.3d 545, 551 (10th Cir. 1994), cert. denied, ___ U.S.___, 116 S. Ct. 92 (1995). However, Defendants' reliance on Bolden is misplaced because this case involves more than isolated incidents of sexual harassment. In Bolden, we held that only two overtly racial comments and one arguably racial remark over the course of the plaintiff's eight years of employment did not constitute pervasive conduct. Id. at 551. Similarly, we held

---

[1] The record indicates that while some of the other employees found Mr. Mangus' management style intimidating, they were not personally subjected to any sexual or racial abuse.

9

in Lowe v. Angelo's Italian Foods, Inc., 87 F.3d 1170 (10th Cir. 1996), that one isolated comment and the use of the term "girlie," "although regrettable, do not demonstrate that the work environment . . . was 'permeated with discriminatory intimidation, ridicule, and insult.'" Id. at 1175 (citation omitted); see also Creamer v. Laidlaw Transit, Inc., 86 F.3d 167, 170 (10th Cir.) (holding single incident of sexual harassment was neither sufficiently pervasive nor severe to constitute a hostile work environment), cert. denied, ___U.S.___, 117 S. Ct. 437 (1996); Gross, 53 F.3d at 1547 (holding one single statement that could be construed as gender-based and hostile was insufficient to demonstrate hostile work environment under Meritor). The record reflects that in this case Plaintiff presented evidence of approximately six statements made by Mr. Mangus to her over her twenty-three month employment.[2] There is also testimony that such sexually disparaging remarks were repeated frequently. We note that while courts have tended to count events over time to determine pervasiveness, the word "pervasive" is not a counting measure. The

_____

[2] In its order on Defendants' Motion for Summary Judgment, the district court judge found three of six statements proffered by Plaintiff not actionable because they were not gender-based. Appellants' App., Vol. I at 42-43. The judge also found in this order that the three actionable statements did not constitute pervasive harassment under Title VII. Id. at 43.

However, the same judge, without objection, allowed testimony on all six statements at trial, and concluded that a jury could find the "three [actionable] comments . . . coupled with the use of the F word" pervasive. Id., Vol. III at 800-801. The judge, also without objection, considered five of the statements relevant in finding that the jury's compensatory damage award to Plaintiff was reasonable and supported by the evidence. Id., Vol. I at 166-67.

10

trier of fact utilizes a broader contextual analysis. It begins with the number, sequence, and timing of the conduct. The factfinder then looks at the nuances of an environment that is imposed by each instance of discriminatory behavior. Therefore, although the test is disjunctive and we affirm on the ground of severity, we conclude that while it is a closer question, the evidence is also sufficient to support a finding of pervasive harassment under the standard set by <u>Meritor</u>.[3] Therefore, the district court did not err by denying Defendants' Motion for Judgment as a Matter of Law.

## III.

Defendants attempt to argue on appeal that they cannot be held liable under Title VII because they took prompt remedial action after Plaintiff complained. We reject Defendants' assertion that they raised and argued the issue of prompt remedial action in

---

[3] We note that there are differing views among the circuits about what constitutes a hostile work environment. <u>Compare</u> <u>Winsor</u>, 79 F.3d at 1001 (holding district court erred because "uncontradicted evidence demonstrates 'an environment a reasonable person would find hostile or abusive'") (citation omitted), <u>and</u> <u>Huddleston v. Roger Dean Chevrolet, Inc.</u>, 845 F.2d 900, 904 (11th Cir. 1988) (holding that plaintiff made out prima facie case of sexual harassment), <u>with</u> <u>Black v. Zaring Homes, Inc.</u>, 104 F.3d 822, 826-27 (6th Cir.), <u>cert. denied</u>, ___U.S.___, 118 S. Ct. 172 (1997) (holding that male co-worker's comments and jokes in plaintiff's presence were not sufficiently severe or pervasive to establish an objectively hostile work environment), <u>and</u> <u>Gleason v. Mesirow Fin., Inc.</u>, 118 F.3d 1134, 1144-45 (7th Cir. 1997) (affirming that incidents did not create an objectively hostile work environment because plaintiff was not the target of alleged harassment and because harassment was not gender-based), <u>and</u> <u>Baskerville v. Culligan Int'l Co.</u>, 50 F.3d 428, 431 (7th Cir. 1995) (reversing jury verdict for plaintiff where nine verbal incidents did not create an objectively hostile work environment). However, a close reading of these cases illustrates that they are largely distinguishable from each other, and from this case, on their facts.

the district court and therefore properly preserved the issue for appeal. Therefore, we decline to consider the merits of the prompt remedial action issue.

Defendants characterize their Motion for Judgment as a Matter of Law and Renewed Motion for Judgment as a Matter of Law or in the Alternative, a New Trial as encompassing the prompt remedial action issue. Federal Rule of Civil Procedure 50(a) requires that a motion for judgment as a matter of law state specific grounds upon which the moving party is entitled to judgment. See 9 James Wm. Moore et al., Moore's Federal Practice § 50.03 (3d ed. 1997). This is to ensure that the motion is sufficiently precise to afford the opposing party and the judge the opportunity to properly respond. See Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1173 (3d Cir. 1993). Defendants did not specifically object to or enumerate the issue of prompt remedial action in their Motion for Judgment as a Matter of Law filed at the close of Plaintiff's case, in their renewal of the motion after the jury's verdict, or at any other time.[4] The failure to move for a judgment as a matter of law on, or otherwise properly object to,[5] the specific issue of

_____

[4] The record reflects that Defendants specifically raised and briefed the prompt remedial action issue in their Motion for Summary Judgment filed April 5, 1996, prior to the commencement of trial. The district court denied the motion for summary judgment on the Title VII claim, finding questions of fact existed. However, "[f]ailure to renew a summary judgment argument--when denial was based on factual disputes--in a motion for judgment as a matter of law . . . is considered a waiver of the issue on appeal." Wolfgang v. Mid-America Motorsports, Inc., 111 F.3d 1515, 1521 (10th Cir. 1997); see Allahar v. Zahora, 59 F.3d 693, 695-96 (7th Cir. 1995). Therefore, Defendants' Motion for Summary Judgment does not preserve the prompt remedial action issue for appeal.

[5] The trial judge and counsel for both parties addressed the issue of prompt remedial action at the instructions conference. Defendants objected neither to the content

12

prompt remedial action precludes our review of this issue on appeal. "[A]ppellate courts have discretion to hear matters not raised or argued [in the district court]." Rademacher v. Colorado Ass'n of Soil Conservation Med. Plan, 11 F.3d 1567, 1571 (10th Cir. 1993); see Singleton v. Wulff, 428 U.S. 106, 121 (1976). However, the general rule is that "[t]he failure to raise the issue with the trial court precludes review except for the most manifest error." Hicks v. Gates Rubber Co., 928 F.2d 966, 970 (10th Cir. 1991) [Hicks II]. We conclude that this case is not one where manifest injustice would result and therefore we decline to review for plain error.

## IV.

Defendants further contend that the trial court abused its discretion by failing to grant their Motion for Remittitur. Defendants argue the jury award was excessive, even when reduced to the $200,000 statutory cap, and was the result of bias, passion, or prejudice. They assert that the evidence presented by Plaintiff cannot support the verdict, in light of the injury suffered by Plaintiff. We review the district court's denial of a motion for remittitur for an abuse of discretion. Fitzgerald v. Mountain States Tel. & Tel. Co., 68 F.3d 1257, 1261 (10th Cir. 1995). We believe the damages, as reduced, are proper.

---

of the instructions on prompt remedial action nor to their submission to the jury. Appellants' App., Vol. III at 834-36. Defendants' failure to object at this opportunity further supports our discretionary decision not to review an issue not properly preserved for appeal.

13

The record reflects that the district court adopted the jury's damage figure and reduced it to the statutory maximum under 42 U.S.C. § 1981a(b)(3). The district court then analyzed the evidence of damages in light of the factors considered in our prior cases, Fitzgerald, 68 F.3d at 1265-66, and Wulf v. City of Wichita, 883 F.2d 842, 874-75 (10th Cir. 1989).[6] First, the district court characterized the actual remarks made to Plaintiff as "invective." Appellants' App., Vol. I at 166. "Invective" is defined as "an abusive expression or diatribe" or "a vehement verbal attack." Webster's Third New International Dictionary 1188 (1986). We presume the court chose its words carefully and intended to use such strong language to describe Mr. Mangus' remarks.

Second, the court examined the nature of the harm suffered by Plaintiff, citing nausea, migraines, humiliation, degradation, loss of self-respect, sleeplessness, consumption of sleeping pills, frequent crying, loss of a loan officer career, and stress in Plaintiff's relationship with her daughter. Although, as in Wulf, Plaintiff's testimony about her emotional suffering was not exceedingly graphic or detailed, it could constitute substantial evidence when considered in conjunction with the totality of circumstances surrounding Plaintiff's claim. The record reveals that Plaintiff's testimony was, in part,

---

[6] The findings of an advisory jury are merely advisory. The district court therefore followed the requirement of Federal Rule of Civil Procedure 52(a) and made its own findings and conclusions as to Plaintiff's claims. See Fed. R. Civ. P. 52(a); Trotter, 719 F.2d at 348; see also United States v. Stanberry, 963 F.2d 1323, 1327 (10th Cir. 1992) (Seymour, J., concurring) (noting that even with use of an advisory jury, the court is responsible for the ultimate determination of facts).

14

corroborated by independent, objective testimony. At least two of Plaintiff's co-workers testified from personal knowledge she was hurt, visibly shaken, and on the verge of tears. Appellants' App., Vol. I at 252, 258; Vol. II at 417-18. The plaintiffs in Fitzgerald and Wulf did not present such independent corroborative evidence. See Fitzgerald, 68 F.3d at 1265-66 (noting that clinical psychologist hired to testify only repeated plaintiff's accounts and admitted other factors could "have a very serious effect" on plaintiff's emotional state); Wulf, 883 F.2d at 875 (no corroborating evidence with the exception of the testimony of defendant's wife).

Defendants' argument that there was no evidence of "physical abusiveness, contact, or sexual intimidation" is neither accurate nor relevant. Appellants' Opening Br. at 30. Without restating them here, it is clear that some of the statements in question were sexually intimidating and offensive. See Appellants' App., Vol. I at 166. More importantly, Plaintiff is not required to produce evidence of physical abuse or contact to establish a hostile work environment claim. See Meritor, 477 U.S. at 65 (holding sexual harassment includes "verbal *or* physical conduct of a sexual nature") (quoting 29 C.F.R. § 1604.11(a) (1985)) (emphasis added); Harris, 510 U.S. at 21-23 (holding gender-based insults and unwanted sexual innuendoes could be sufficient to constitute a hostile work environment without proof of concrete physiological injury); Black, 104 F.3d at 826-27 (confirming defendant's concession that verbal conduct alone can create a successful hostile work environment claim if it is objectively hostile or abusive).

Defendants further contend that because Plaintiff failed to provide the testimony of a treating physician or psychologist, the evidence supporting her compensatory damages is insubstantial. This argument is also without merit. Fitzgerald does not stand for the proposition that a plaintiff must have the testimony of a treating physician to prove her compensatory damages. Such testimony is one suggested method of proving emotional damages but is not the sole dispositive requirement. See Fitzgerald, 68 F.3d at 1265; see also Harris, 510 U.S. at 23 (holding proof of psychological harm is one relevant factor but is not required). Considering the cumulative evidence of Plaintiff's emotional harm, the absence of testimony by a treating physician does not necessarily mean her claim is devoid of substantial evidence.

Third, the context of the discriminatory behavior was also relevant to the award of damages in this case. See Fitzgerald, 68 F.3d at 1265 (finding context of diversity training session significant). The court found that Mr. Mangus' "comments to and treatment of [Plaintiff were] even more damaging considering . . . [the] intimate office setting" in which Plaintiff's co-workers could hear or occasionally see the abuse. Appellants' App., Vol. I at 167; see id. at 249-56, 309-24. Although there may have been a joking and casual atmosphere in the office, two of Plaintiff's co-workers testified that they found Mr. Mangus' behavior "sexually inappropriate," "offensive," and "intimidating." Appellants' App., Vol. I at 271; Vol. II at 414.

Finally, our review of the record reveals that the court considered several convenience and economic factors relevant to Plaintiff's compensatory damages award. The court believed that setting aside the front pay (fringe benefit) award was germane because it did so "in light of the sizeable compensatory damage award." Id. Vol. I at 159-60, 167 & n.10. Plaintiff's benefits at her new job were not comparable to those at Norwest. Moreover, unlike the plaintiffs in Fitzgerald, Plaintiff did not continue to work in her chosen field of consumer credit after the discriminatory conduct. The court found that the compensatory award was appropriate in light of the cumulative evidence. The amount of the award did not "shock the [district court's] judicial conscience," and it does not shock ours. Appellants' App., Vol. I at 166 (internal quotation marks omitted); see Malandris v. Merrill Lynch, Pierce, Fenner & Smith Inc., 703 F.2d 1152, 1168 (10th Cir. 1981), cert. denied, 464 U.S. 824 (1983). We cannot conclude that the district court abused its discretion by denying the motion for remittitur.

### V.

Finally, Defendants argue that the trial court abused its discretion by awarding Plaintiff attorney's fees at an excessive rate for an unreasonably high number of hours. The district court determined Plaintiff was a "prevailing party" in her Title VII action, and awarded Plaintiff $75,493.75 in attorney's fees. We review the district court's award for an abuse of discretion. Hensley v. Eckerhart, 461 U.S. 424, 436-37 (1983); Anderson v. Secretary of Health & Human Servs., 80 F.3d 1500, 1504 (10th Cir. 1996).

17

Defendants challenge the district court's application of the law in this matter. Plaintiff is permitted to recover a reasonable fee, represented by "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."[7] Hensley, 461 U.S. at 433. This is commonly referred to as the "lodestar" amount. Lucero v. City of Trinidad, 815 F.2d 1384, 1385 (10th Cir. 1987). In support of her application for attorney's fees, Plaintiff submitted the affidavits of Mr. Les Bowron and Mr. Frank R. Chapman and an accounting of all expenses. She requested an award for 735 hours of fees at rates of $125 and $150 per hour for her attorneys. The court calculated the reasonable rate by examining "the prevailing market rates in the relevant community." Blum v. Stenson, 465 U.S. 886, 895 (1984). The judge looked at a published survey of Wyoming lawyers for guidance, and relied on his own knowledge for further analysis. He found that although $125 per hour was in the top ten percent of rates charged in Wyoming, that rate prevailed in the relevant community of Casper and was therefore reasonable. The trial judge "is uniquely qualified to establish the reasonable hourly rate multiplier" because he is familiar with the case and the prevailing rates in the community. Lucero, 815 F.2d at 1385-86; see Gurule v. Wilson, 635 F.2d 782, 794 (10th Cir. 1980), overruled on other grounds, Cox v. Flood, 683 F.2d 330, 331 (10th Cir. 1982). We cannot say that the court's analysis or partial reliance on his own knowledge amounts to

---

[7] Although this standard was articulated in a 42 U.S.C. § 1988 case, we have held that it applies to fee awards under 42 U.S.C. § 2000e-5(k) as well. See Griffith v. Colorado, Div. of Youth Servs., 17 F.3d 1323, 1328 (10th Cir. 1994).

18

an abuse of discretion. The court properly relied "on all relevant factors known to it in establishing the reasonable rate . . . to derive the 'lodestar' figure." Lucero, 815 F.2d at 1385.

The court reduced the hours billed by 80.35 hours for duplicative attorney work, 20 hours for unproductive travel time, and 25 hours for time spent on claims dismissed by the pretrial summary judgment. Defendants contend that the court did not sufficiently reduce the billable hours calculated for the award because Plaintiff "lost on 80% of her claims." Appellants' Opening Br. at 34. Defendants' reliance on Daniel v. Loveridge, 32 F.3d 1472 (10th Cir. 1994), to support their argument is misplaced. The defendants in Daniel argued that the plaintiff should receive only one-sixth of her requested attorney's fees because she lost five out of six claims. We affirmed the award of 60% of the plaintiff's fees because the district court found plaintiff prevailed on the "central portion" of her claim. Id. at 1478. Notably, the district court in Daniel awarded the plaintiff 60% of her requested fees even though she lost on four of five claims that proceeded to trial. Id. In this case, the record reflects that Plaintiff not only prevailed on the central portion of her claim, but she succeeded on the only claim that proceeded to trial. Moreover, the Title VII sexual harassment claim was Plaintiff's principal claim from the outset. Hensley held that "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees." Hensley, 461 U.S. at 440. Hensley further stated that "[w]here a lawsuit consists of related claims, a plaintiff who has won

substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." Id. The critical issue, therefore, is whether the claims dismissed on summary judgment were "related claims" within the meaning of Hensley or "distinct in all respects" from the Title VII claim. See id.; see also Jane L. v. Bangerter, 61 F.3d 1505, 1512 (10th Cir.1995) (holding plaintiff's successful due process claim precludes reduction of the lodestar amount on the basis of related, unsuccessful alternative legal theories).

We conclude that Plaintiff's original claims--breach of Wyoming and national public policy against sexual harassment; constructive discharge from the harassment; intentional infliction of emotional distress caused by the harassment; and punitive damages--are all intimately related to the Title VII hostile work environment claim on which Plaintiff prevailed. Each of these substantive claims are related because they were based on "a common core of facts." Hensley, 461 U.S. at 435; see Jane L., 61 F.3d at 1512. Additionally, Plaintiff successfully achieved her goal by raising related claims with different legal theories. See Hensley, 461 U.S. at 435. By succeeding on her Title VII claim, Plaintiff effectively enforced the state and national public policy against sexual harassment and received compensation for her emotional suffering. Also, the jury instructions for the Title VII claim referred to constructive discharge as relevant to

Plaintiff's emotional damages, even though that specific claim had been dismissed.[8]

After reviewing the record, we hold that the district court did not abuse its discretion by awarding Plaintiff 80% of her requested fees. We also cannot say that the district court abused its discretion for the selected hours he withdrew for duplicative time and unproductive travel time. See Mares v. Credit Bureau of Raton, 801 F.2d 1197, 1202 (10th Cir. 1986) (concluding that the district court is not required to "identify and justify each disallowed hour" or "announce what hours are permitted for each legal task"). Because Defendants do not object to the district court's award of costs, we will not disturb the court's award of $18,013.56 in costs.

## VI.

On cross-appeal Plaintiff contends the trial court abused its discretion by denying her Motion for Sanctions based on Defendants' conduct at the settlement conference. Plaintiff asserts that Defendants' conduct at the May 20, 1996 settlement conference was improper and violated the United States District Court for the District of Wyoming's Local Rule 101. Plaintiff also pleads for sanctions in order to prevent future litigants from abusing the federal court settlement process. Defendants reply that the local rule does not require sanctions and the district court did not abuse its discretion. The magistrate judge found that Defendants' counsel, Mr. Michael T. Bates in particular, did

---

[8] In its order on summary judgment, the district court did not dismiss the punitive damages claim but prevented the parties from mentioning it until the close of all evidence. The record reflects no further reference to the punitive damages claim.

not attend the conference with the requisite full authority to settle; was unwilling to negotiate and act in good faith; unnecessarily caused the conference to take place; and wasted the court's, plaintiff's, and her counsel's time. Appellee's App. at 25-30. The magistrate judge, however, did not enter an order to this effect in order to keep the proceedings confidential until the conclusion of the trial. Id. at 31-32.

Federal Rule of Civil Procedure 16(a) & (f) authorizes the district court to impose just sanctions "if a party or party's attorney fails to participate [in a settlement conference] in good faith." Fed. R. Civ. P. 16(f). The District Court for the District of Wyoming is authorized, but not required, to impose sanctions for the failure of a party to participate in a settlement conference in accordance with the local rules. See U.S.D.C.L.R. 101(c). Moreover, a federal court possesses the authority "to impose . . . sanctions on 'its inherent power to control and supervise its own proceedings.'" United States v. Evans & Assocs. Constr. Co., 839 F.2d 656, 660 (10th Cir. 1988) (citing United States v. Carrigan, 804 F.2d 599, 603 (10th Cir. 1986)). While the inappropriate behavior of defense counsel at the settlement conference would have supported sanctions, the district court is not compelled by any legal precedent to impose them. Therefore, we cannot conclude that the district court abused its discretion by deciding not to sanction Defendants.

**AFFIRMED**.

22