**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 15, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MICHELLE CHRISTIAN,

       Plaintiff-Appellant,

v.

AHS TULSA REGIONAL MEDICAL
CENTER, LLC, d/b/a OSU Medical
Center,

       Defendant-Appellee.

No. 10-5020
(D.C. No. 4:08-CV-00622-GKF-TLW)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TYMKOVICH**, Circuit Judge, **PORFILIO**, Senior Circuit Judge, and
**GORSUCH**, Circuit Judge.

---

    Michelle Christian appeals the grant of summary judgment in favor of her

former employer, AHS Tulsa Regional Medical Center ("the Hospital"), on her

Title VII sex discrimination claims. We agree with the district court that

Ms. Christian was unable to demonstrate the existence of a genuine dispute of

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

material fact with regard to either prong of the Hospital's two-part affirmative defense, and therefore affirm.

## I. Background

Ms. Christian began working for the Hospital as a pharmacy clerk in June 2005. Aplt. App., Vol. I at 105, 168. She became a pharmacy technician in July 2005 and worked in that job until she resigned at the end of January 2008. *Id.* at 168, 175-76. Mr. Terry Moorhead became Ms. Christian's immediate supervisor in February 2006. *Id.*, Vol. II at 398. She claims he sexually harassed her and other female pharmacy technicians during the nearly two years that he was her supervisor, and that his actions created a hostile work environment.

Specifically, Ms. Christian describes four situations where Mr. Moorhead made sexually charged comments, and two situations where he leaned against her while she was at a computer or copy machine. She alleges that the two incidents involving physical touching occurred in early 2007, and three of the four comments occurred between February and May 2007. The last comment occurred on October 17, 2007.

Ms. Christian made her first complaint to the Hospital's Human Resources department (HR) on October 18, 2007. But her initial complaint was not just about sexual harassment—it was primarily about her work schedule. She had started taking classes at a community college in August 2007, and Mr. Moorhead was no longer willing to accommodate her work schedule. He also had recently

assigned her to work Christmas day, even though she had children at home. After discussing these complaints with the HR representative, Ms. Christian raised her allegation of sexual harassment. She described one unwelcome touching incident that occurred in early 2007, and one crude comment Mr. Moorhead had made the day before her complaint. She also asserted that three other women in the pharmacy had been subjected to inappropriate behavior by Mr. Moorhead. Given the allegations of unwelcome sexual conduct, the HR representative told Ms. Christian that HR would have to investigate the charges.

Later that day, Ms. Christian attempted to retract the complaint, but was told the investigation would have to go forward. Ms. Christian was asked to provide additional information in writing that detailed Mr. Moorhead's conduct. After receiving a reminder from HR, Ms. Christian provided a brief list of her harassment allegations on October 26, 2007. An HR representative explained that HR needed a complete and detailed description of the events that took place, and Ms. Christian agreed to return later that day with more information. However, she did not do so.

In the weeks following the complaint, HR interviewed several of the women and men who worked in the pharmacy. Investigators interviewed one of the other women Ms. Christian named as having been a victim of harassment, but did not interview the other two after learning from Ms. Christian and another co-worker that the women were unwilling to be involved and unhappy that

Ms. Christian had named them.  HR also interviewed the two co-workers Ms. Christian named as potential witnesses.

The pharmacy witnesses the Hospital interviewed did not confirm the allegation of sexual harassment.  One woman Ms. Christian identified as another victim denied having experienced harassment.  She stated further that while Ms. Christian was her friend and she wished to support her, she had never witnessed any inappropriate behavior from Mr. Moorhead.  Another employee told HR that Mr. Moorhead would joke and play around with staff, but that she never witnessed any behavior she thought inappropriate.  A male employee did confirm Ms. Christian's account of Mr. Moorhead standing too close behind her as she replaced the paper in the copy machine, causing her to stand into him, but could not describe other inappropriate comments or behavior.

Finally, Mr. Moorhead denied the allegations made against him.  After evaluating the conflicting but ultimately inconclusive evidence, HR counseled Mr. Moorhead about his workplace conduct and specifically warned him not to retaliate against Ms. Christian because of her allegations.  On November 5, 2007, HR notified Ms. Christian that it had completed the investigation and considered the matter closed.  Shortly thereafter, Ms. Christian went on pre-approved medical leave.  *Id.* at 346, 348.

On November 27, 2007, while she was still on medical leave, Ms. Christian sent a detailed written account of her allegations.  The document contained four

additional and previously undisclosed allegations of inappropriate comments and touching occurring in February, April, and May of 2007, but did not identify new witnesses or any events taking place after her original complaint. HR responded with a letter explaining that the new information did not change its decision. The letter stated further that if Ms. Christian disagreed with this decision, she could pursue a fair hearing process.

When Ms. Christian returned to work in January 2008, she claims other pharmacy employees harassed her because of the complaint she had lodged against Mr. Moorhead. Claiming intolerable working conditions as a result, she resigned.

## II. The District Court's Ruling

Ms. Christian subsequently brought this action against the Hospital, raising claims of a hostile work environment, retaliation, negligent supervision, and intentional infliction of emotional distress. The Hospital sought summary judgment on each of the claims. The district court made two rulings relevant to this appeal: (1) Ms. Christian failed to establish a prima facie case of discrimination because no rational jury could conclude that the conduct she alleged, however obnoxious, was sufficiently severe or pervasive to have altered the conditions of her employment; and (2) the Hospital successfully asserted an affirmative defense by establishing that its investigation was reasonable and that

Ms. Christian had hindered the investigation by unreasonably failing to cooperate. Aplt. App., Vol. II at 549-52.

## III.  Discussion

"On appeal, we review the district court's grant of summary judgment de novo, applying the same standards that the district court should have applied." *EEOC v. C.R. England, Inc.*, Nos. 09-4207, 09-4217, 2011 WL 1651372, at *5 (10th Cir. May 3, 2011) (brackets omitted) (internal quotation marks omitted). "The district court's grant of summary judgment must be affirmed 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)).[1] "In reviewing a motion for summary judgment, we consider the evidence in the light most favorable to the non-moving party." *Id.* (internal quotation marks omitted).

To establish a hostile workplace claim, a plaintiff must satisfy the requirements set forth in *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57 (1986), and *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993).  Under *Meritor*, "for sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive

---

[1]    Fed. R. Civ. P. 56 was recently amended, effective December 1, 2010. Under the amended rule, the standard previously enumerated in subsection (c) was moved to subsection (a), and the term genuine "issue" became genuine "dispute."  *See* Rule 56 advisory committee's notes (2010 Amendments). However, "the standard for granting summary judgment remains unchanged."  *Id.*

working environment." *Smith v. Nw. Fin. Acceptance, Inc.*, 129 F.3d 1408, 1412 (10th Cir. 1997) (internal quotation marks omitted) (brackets omitted)).

We explained in *Smith* that the plaintiff must make a two-part showing to satisfy this standard. First, the plaintiff must establish that a reasonable person would find the work environment hostile or abusive. *Smith*, 129 F.3d at 1413 (citing *Harris*, 510 U.S. at 21-22). And second, the plaintiff must show that she subjectively perceived the work environment to be hostile or abusive. *Id.*

> We determine whether an environment is "hostile" or "abusive" by looking at the totality of circumstances, such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; whether it unreasonably interferes with an employee's work performance"; and the context in which the conduct occurred.

*Id.* (quoting *Harris*, 510 U.S. at 23) (ellipsis omitted).

In a case of discrimination that did not result in a tangible employment act, such as discharge or demotion, an employer may avoid liability by raising the affirmative defense outlined by the Supreme Court in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). *Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1059 (10th Cir. 2009). The purpose of this defense is "to recognize the employer's affirmative obligation to prevent violations and give credit . . . to employers who make reasonable efforts to discharge their duty," and acknowledge that the employee has "a coordinate duty to avoid or mitigate harm" by

"avail[ing] herself of the employer's preventive or remedial apparatus." *Faragher*, 524 U.S. at 806-07. To succeed in this defense, the employer must establish by the preponderance of evidence that: (1) the employer "exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Pinkerton*, 563 F.3d 1059 (internal quotation marks omitted).

Ms. Christian argues on appeal that the district court erred in ruling: (1) that she failed to establish that the sexually hostile work environment was severe or pervasive and therefore objectively hostile; and (2) that the Hospital succeeded in making its *Ellerth/Faragher* affirmative defense. Since we agree with the second of the district court's rulings, we need not reach the issue of whether the workplace was sufficiently hostile. In short, Ms. Christian cannot establish a genuine factual dispute as to either prong of the *Ellerth/Faragher* affirmative defense—the Hospital took reasonable preventive and corrective actions based on the information provided to it, and Ms. Christian unreasonably failed to take advantage of the hospital's corrective processes.

## A. *The Hospital Took Sufficient Preventive and Corrective Action*

First, the district court was correct in concluding the undisputed material facts show that the Hospital took reasonable preventive and corrective actions and therefore satisfied the first prong of the defense. *See Pinkerton*, 563 F.3d

at 1062-63.  Generally, an employer can show it took reasonable preventive measures by establishing that it promulgated and enforced an effective sexual harassment policy.  *Thornton v. Fed. Express Corp.*, 530 F.3d 451, 456 (6th Cir. 2008); *Walton v. Johnson & Johnson Servs., Inc.*, 347 F.3d 1272, 1286 (11th Cir. 2003).

An employer's reasonable remedial measures "should be designed to stop the harassment, correct its effects on the employee, and ensure that the harassment does not recur."  *Walton*, 347 F.3d at 1288 (internal quotation marks omitted).  "The most significant immediate measure an employer can take in response to a sexual harassment complaint is to launch a prompt investigation to determine whether the complaint is justified."  *Swenson v. Potter*, 271 F.3d 1184, 1193 (9th Cir. 2001).  But "there is nothing in the *Faragher* or *Ellerth* decisions requiring a company to conduct a full-blown, due process, trial-type proceeding in response to complaints of sexual harassment."  *Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1304 (11th Cir. 2007).  "All that is required of an investigation is reasonableness in all of the circumstances, and the permissible circumstances may include conducting the inquiry informally in a manner that will not unnecessarily disrupt the company's business, and in an effort to arrive at a reasonably fair estimate of truth."  *Id.*

The Hospital's preventive policies and investigation meets these standards. The undisputed evidence shows that the Hospital had a sexual harassment policy

which set forth employee rights in detail. Ms. Christian was given a copy of the employee handbook and was familiarized with the harassment policy at an orientation meeting shortly after she began work. Aplt. App., Vol. I at 105, 194. She also attended a training session where employees were encouraged to promptly report any incidents of sexual harassment to HR. *See Walton*, 347 F.3d at 1286 ("At a minimum, employers must 'establish a complaint procedure designed to encourage victims of harassment to come forward without requiring a victim to complain first to the offending supervisor.'" (quoting *Faragher*, 524 U.S. at 806) (internal quotation marks omitted) (brackets omitted)).

And after Ms. Christian made her complaint, the Hospital engaged in a timely and reasonably thorough investigation that included interviews with Ms. Christian, other employees in the pharmacy, and Mr. Moorhead himself. In addition, although Mr. Moorhead was not formally disciplined, he remained subject to more serious sanctions if improper behavior was alleged again. In these circumstances, the Hospital's response to and investigation of Ms. Christian's allegations were reasonable.

Ms. Christian's arguments to the contrary are unpersuasive. First, she claims the investigation was unreasonable because it discredited her allegations in the face of Mr. Moorhead's denial of misconduct. But "[t]he requirement of a reasonable investigation does not include a requirement that the employer credit uncorroborated statements the complainant makes if they are disputed by the

-10-

alleged harasser.  Nothing in the *Faragher-Ellerth* defense puts a thumb on either side of the scale in a he-said, she-said situation."  *Baldwin*, 480 F.3d at 1303.  And, in fact, HR did interview other employees in the pharmacy.  Ms. Christian claims that additional employees should have been interviewed, but HR spoke to those Ms. Christian identified as having observed conduct directed at her and had a reasonable explanation for not interviewing others.  The pharmacy witnesses the Hospital interviewed did not provide evidence that would support a charge of sexual harassment against Mr. Moorhead.  In short, the results of the investigation were inconclusive, yet the Hospital still counseled Mr. Moorhead in light of its anti-discrimination policy.

Next, Ms. Christian claims the Hospital failed to adequately investigate an earlier complaint against Mr. Moorhead.  In April 2006, an anonymous complaint had been lodged against Mr. Moorhead, but it was later withdrawn.  The Hospital had begun an investigation, but discontinued it after the complaint was withdrawn.  Nonetheless, Mr. Moorhead was issued a reprimand and counseled against inappropriate comments or touching.  Nothing about the previous incident calls into question the reasonableness of the Hospital's investigation of Ms. Christian's allegations.  If anything, it shows that the Hospital took the prior allegation seriously, and underscores its unwillingness to allow Ms. Christian's allegations to go uninvestigated.

In addition, Ms. Christian claims the Hospital should have suspended Mr. Moorhead while it conducted the investigation. But the Hospital had no obligation to suspend Mr. Moorhead during this time. It is true that, "[i]n certain circumstances, an employer's failure to remove a supervisor from close working proximity with a subordinate who has alleged sexual harassment against that supervisor might be seen as unreasonable." *Pinkerton*, 563 F.3d at 1062. But this is not so where, as here, the complaining subordinate did not ask for such a separation, and the employer acted quickly to investigate and resolve the complaint. *See id.*

Finally, Ms. Christian argues the Hospital should have launched a second investigation based on events that took place after the first complaint. She alleges that after she returned to work from medical leave in January 2008, Mr. Moorhead commented that he was glad that she was feeling better, and that her "husband's taking care of you now." Aplt. App., Vol. II at 356. She also alleges that when she told Mr. Moorhead a co-worker was "on" a customer's request, he replied "Oh, he's on it? How is he on it?" *Id.* at 350. She perceived both remarks as sexual. She argues the Hospital was unreasonable for failing to initiate a second investigation on the basis of these allegations. But we agree with the district court that the remarks were too ambiguous to support a hostile workplace claim, and, in any event, Ms. Moorhead was asked to put the accusation in writing and she refused to do so.

In sum, we agree with the district court that given the undisputed facts regarding the Hospital's investigation into Ms. Christian's allegations, "we see no genuine issue left for trial about the reasonableness of [the Hospital's] response." *See Pinkerton*, 563 F.3d at 1063.

### B. Ms. Christian Unreasonably Failed to Take Advantage of the Hospital's Corrective Process

We also conclude that Ms. Christian unreasonably failed to take advantage of the Hospital's corrective processes set forth in its policy handbook by delaying in reporting her allegations. Though all but one of the incidents are alleged to have taken place between January and May of 2007, Ms. Christian did not make a complaint to HR until October. *Cf. Pinkerton*, 563 F.3d at 1063-64 & n.6 (concluding that employee's two-month delay in reporting alleged harassment was unreasonable as a matter of law). Even then, she reported only two incidents, and delayed in reporting four additional incidents until the end of November. Moreover, she failed to cooperate with the HR investigation by providing the written detail they asked for—until three weeks after she received notification that the investigation had closed. Ms. Christian does not attempt to explain this delay, and we conclude that it is unreasonable.

## III. Conclusion

Accordingly, we AFFIRM the district court's decision to grant the Hospital summary judgment on the claim of a hostile working environment.

ENTERED FOR THE COURT


Timothy M. Tymkovich
Circuit Judge