**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 24 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DEANNE WHATLEY CHAVEZ,

     Plaintiff-Appellee/Cross-
Appellant,

v.

THOMAS & BETTS CORPORATION
and PATRICIA MARRUJO,

     Defendants-Appellants/Cross-
Appellees.

Nos. 03-2265, 03-2274, 03-2304

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. 01-CV-1341 RLP/WDS)**

Kenneth A. Jenero (Todd D. Steenson, with him on the briefs) Holland & Knight,
L.L.P., Chicago, Illinois, for Defendants-Appellants/Cross-Appellees.

Paul J. Kennedy (Mary Y. C. Han, with him on the briefs) Kennedy & Han, P.C.,
Albuquerque, New Mexico, for Plaintiff-Appellee/Cross-Appellant.

Before **MURPHY**, **BALDOCK**, and **TYMKOVICH**, Circuit Judges.

**BALDOCK**, Circuit Judge.

Plaintiff Deanne Whatley Chavez sued her former employer Defendant Thomas & Betts Corp. (T&B) and former supervisor Defendant Patricia Marrujo (Marrujo), among others, alleging violations of (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, (2) the Family Medical Leave Act, 29 U.S.C. §§ 2611 to 2654 (FMLA), (3) the New Mexico Human Rights Act, and (4) New Mexico tort law. The district court granted T&B's motion for summary judgment on Plaintiff's FMLA claim and her state tort claim for intentional infliction of emotional distress, but denied summary judgment on all other claims. The case proceeded to trial.

After a one-week jury trial, the jury returned a verdict for Plaintiff on her: (1) claim against T&B for sexual discrimination and hostile work environment in violation of Title VII and the New Mexico Human Rights Act; (2) claim against T&B for negligent retention and supervision; and (3) claims against Marrujo for assault and battery. The jury awarded Plaintiff a total of $145,625 in compensatory damages and $354,375 in punitive damages against T&B. The jury also awarded Plaintiff $20,750 in compensatory damages and $3,250 in punitive damages against Marrujo. The jury rejected Plaintiff's Title VII retaliation claim. The district court entered a final judgment. Thereafter, the district court denied T&B and Marrujo's post-trial motions for judgment as a matter of law and for a new trial. See Fed. R. Civ. P. 50(b) and 59(a), (e). The court subsequently

2

awarded Plaintiff her attorney's fees and costs.

T&B and Marrujo appeal from the district court's denial of their post-trial motions and order awarding Plaintiff attorney's fees and costs. Plaintiff cross-appeals the district court's dismissal of her FMLA claim on summary judgment. We consolidated the appeals. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.

## I. **Background**

The historical facts, construed in a light most favorable to the jury verdict, are as follows: T&B owns and operates a manufacturing facility in Albuquerque, New Mexico. Plaintiff was employed at T&B from 1987 to 2001. Marrujo, Plaintiff's coworker, was promoted to a supervisory position in April, 2000.[1] Thereafter, Plaintiff alleges she suffered harassment when Marrujo humiliated her in front of coworkers, made inappropriate remarks towards her, and physically assaulted her.

Specifically, Plaintiff testified that Marrujo often made humiliating comments about her in front of men regarding Plaintiff's "body parts," whom Plaintiff had sex with, how they had sex, and "what kinds of toys [they] used." Further, Marrujo frequently called men over to guess what kind of underwear

---

[1] The district court instructed the jury to disregard all evidence of harassment occurring prior to Marrujo's supervisory position. Accordingly, we too only consider Marrujo's post-supervisory conduct.

Plaintiff was wearing and to determine whether they could see through Plaintiff's pants and shirt. Marrujo also encouraged men to harass Plaintiff. At one time, Marrujo wanted to know if Plaintiff's "hair color matched [her] pubic hair." As a result, a male coworker approached Plaintiff and offered her $100 to see her pubic hair.

Plaintiff explained that sometime in May or June, 2000, Marrujo exclaimed Plaintiff's "bra is probably prettier than mine," and then reached over and pulled open Plaintiff's shirt exposing her chest and bra to coworkers. Plaintiff quickly closed her shirt and felt "humiliated" and "embarrassed." Thereafter in June, 2000, Marrujo came up behind Plaintiff and pulled open Plaintiff's pants exposing her underwear to coworkers. In response, a male coworker exclaimed "[g]osh, you have a hairy back." Again, Plaintiff felt humiliated. Roxanne Mussleman, a T&B supervisor, was working in front of Plaintiff when Marrujo pulled open Plaintiff's pants, but did not report Marrujo's conduct. Further, Plaintiff explained that T&B supervisors were often "around" when Marrujo harassed her but failed to intervene or report Marrujo's conduct.

Plaintiff's coworkers, Irene Armijo and Barbara Garcia, testified that Marrujo regularly directed sexually charged, humiliating, and hostile comments towards women in the workplace. Armijo explained that Marrujo repeatedly made derogatory comments about women such as "[if] you needed to find some guy,

4

[g]o look for him over there at Irene's press. He's probably . . . sucking [her] titty." Marrujo made other similar comments to other women in the workplace. Garcia testified that Marrujo was very hostile and "bitter" towards women in general. According to Garcia, Marrujo would regularly classify women as "bitches" while she was much more congenial towards men in the workplace.

Plaintiff reported Marrujo's inappropriate behavior to T&B supervisors, production managers, the human resource department, and the plant manager to no avail. In particular, Plaintiff first complained to her production supervisor, Bob Romo. Romo told Plaintiff to go to T&B's human resource department. In July, 2000, Plaintiff reported Marrujo's conduct to, among others, T&B's human resource manager, Sam Rusbridge, and to T&B's plant manager, Larry Smith. According to Plaintiff, Rusbridge was indifferent to her complaint. T&B's human resource department told Plaintiff they would conduct an investigation. T&B, however, did not conduct any credible investigation until months later. Larry Smith told Plaintiff he "knew" what was going on and would take care of the problem. On July 28, 2000, Marrujo voluntarily transferred to a different shift. Larry Smith told Plaintiff Marrujo was transferred for disciplinary reasons. Marrujo, however, denied her transfer had anything to do with Plaintiff's allegations and explained her transfer was a unilateral decision. When Plaintiff's efforts to notify T&B's management proved futile, she attempted to contact

5

T&B's national office to lodge a complaint. The national office, however, did not respond to Plaintiff's complaints.

Plaintiff was not the only T&B employee to complain of Marrujo's conduct. Barbara Garcia testified she complained to T&B's human resource department that Marrujo was very "hostile" towards women, but T&B failed to do anything to remedy the situation. Plaintiff also introduced into evidence two memoranda written by Bob Romo, a T&B production supervisor, addressed to T&B's human resource manager, Sam Rusbridge, and T&B's plant manager, Larry Smith. (Plaintiff's Ex. 14 & 44). The memoranda expressly warned T&B management that Marrujo's conduct was "unacceptable" and her "continuance in [a] supervisory position would only be detrimental to our facility and to the well being of our future." (Plaintiff's Ex. 44). The memoranda also notified T&B management that Marrujo's conduct had caused one employee to lodge a sexual harassment complaint, suggested that Marrujo's presence undermined T&B's efforts to maintain a "safe" and "healthy" work environment, and ultimately recommended Marrujo's termination. (Plaintiff's Ex. 14). Marrujo was not disciplined or terminated.

In January, 2001, Plaintiff heard a rumor that Marrujo might transfer back to her original shift. Concerned, Plaintiff took medical and personal leave. In mid-April, 2001, Plaintiff requested additional leave under the FMLA. T&B

informed Plaintiff the necessary paperwork for her FMLA request would have to be submitted no later than April 30, 2001. Plaintiff, however, did not submit the proper forms until May 8, 2001. On May 2, 2001, T&B terminated Plaintiff for failing to report or call-in to work for three consecutive work days under its employment policy.

## II. No. 03-2265: Defendants' Direct Appeal

T&B and Marrujo appeal the district court's denial of their post-trial motions for judgment as a matter of law, or in the alternative, for new trial. See Fed. R. Civ. P. 50(b) and 59(a), (e). In particular, T&B and Marrujo contest, among other things, sufficiency of the evidence, jury instructions, damages, and evidentiary rulings. We review *de novo* the district court's denial of a motion for judgment as a matter of law. See Sheets v. Salt Lake County, 45 F.3d 1383, 1387 (10th Cir. 1995). To overturn the denial of a Rule 50(b) motion, "we must conclude that viewed in the light most favorable to the nonmoving party, the evidence and all reasonable inferences to be drawn therefrom point but one way, in favor of the moving party." Id. (internal quotation and citation omitted). We review the denial of a motion for a new trial for abuse of discretion. Sanjuan v. IBP, Inc., 160 F.3d 1291, 1296 (10th Cir. 1998).

### A. Title VII Sexual Harassment

Title VII makes it unlawful for an employer to discriminate against any

individual with respect to her compensation, terms, conditions, or privileges of employment because of her sex. 42 U.S.C. § 2000e-2(a)(1). Same-sex harassment arising from a hostile work environment is actionable under Title VII if the plaintiff can "prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted discrimination *because of sex*." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998) (emphasis added). Courts have developed a two-part test to determine whether same-sex harassment arising from a hostile work environment has occurred.

First, the court must determine whether the harasser's conduct constituted discrimination *because of sex*. La Day v. Catalyst Tech., Inc., 302 F.3d 474, 478 (5th Cir. 2002); see also James v. Platte River Steel Co., 2004 WL 2378778 *2 (10th Cir. 2004) (unpublished). To determine whether discrimination occurred because of sex, evidence must exist from which the fact finder could infer the plaintiff was harassed because she is a woman. Penry v. Federal Home Loan Bank of Topeka, 155 F.3d 1257, 1261 (10th Cir. 1998). "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Oncale, 523 U.S. at 80 (internal quotation omitted). The Court in Oncale explained a plaintiff can prove same-sex discrimination was "because of sex" three different ways. See id. at 80-81. One way, described as

8

Oncale's "third evidentiary route" and the only one at issue in this case, is for a plaintiff to produce direct, comparative evidence about how the harasser treated males and females differently in a mixed-sex work environment. See id.

Second, if a plaintiff carries her burden under the first prong, the court must decide whether the challenged conduct meets the applicable standards for a hostile work environment claim. See LaDay, 302 F.3d at 478. A hostile work environment exists if the workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal citation and quotation omitted). The conduct in question must be judged by both a subjective and an objective standard. See id. To determine whether an environment is hostile, courts must look at all the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Faragher v. Boca Raton, 524 U.S. 775, 787-88 (1998) (internal quotation and citation omitted).

In this case, sufficient evidence exists to support the jury's finding that Plaintiff was harassed because of her sex. In particular, evidence supports the reasonable inference that Marrujo treated men and women differently under

9

Oncale's third evidentiary route. See 523 U.S. at 80-81. Plaintiff's coworkers Irene Armijo and Barbara Garcia both testified that Marrujo regularly directed sexually charged, humiliating, and hostile comments towards women but would not do the same towards men. Garcia testified that Marrujo was very hostile and "bitter" towards women and regularly classified women as "bitches," but she was much more congenial towards men in the workplace.

Plaintiff indicated that Marrujo targeted her as a woman and repeatedly humiliated her in front of men in the workplace. Plaintiff testified that Marrujo often made humiliating comments about her in front of men regarding her "body parts" and often called men over to guess what kind of underwear she was wearing and to determine whether they could see through her pants and shirt. Further, Plaintiff explained that Marrujo physically assaulted her by pulling open her shirt exposing her chest and bra to coworkers and by pulling open her pants, exposing her underwear. Marrujo did not engage in similar physically abusive conduct with men in the workplace. Thus, a reasonable jury could conclude Marrujo treated men and women differently in the workplace and that Plaintiff was harassed because of her sex.[2]

---

[2] The evidence presented at trial was hotly disputed. Although conflicting evidence exists and both parties adequately describe this case as a "she said, she said case," we do not weigh the evidence, pass on the credibility of witnesses, or substitute our conclusions for that of the jury. Hardeman v. City of Albuquerque,

(continued...)

10

Further, sufficient evidence supports the jury's finding that Plaintiff was subjected to a hostile work environment. See Penry, 155 F.3d at 1262. Based on the totality of the circumstances, the evidence clearly shows Plaintiff subjectively perceived Marrujo's conduct as severe enough to create a hostile and abusive working environment. Plaintiff testified that Marrujo's conduct toward her was humiliating, embarrassing, and caused her to become depressed and sick. From an objective standpoint, a reasonable jury could conclude the same. Although Marrujo's assaults as a supervisor occurred over a relatively short period (April, 2000 to roughly July, 2000), they were extreme in nature, physically threatening, and humiliating. See Harrison v. Eddy Potash, Inc., 248 F.3d 1014, 1024 n.5 (10th Cir. 2001). Moreover, Marrujo's discriminatory conduct clearly interfered with Plaintiff's work performance, causing her stress related medical problems and forcing her to take a leave of absence. Based on the foregoing, and viewing the evidence in a light most favorable to Plaintiff, sufficient evidence exists to support the jury's finding that Plaintiff suffered sexual harassment under Title VII, resulting in a hostile and abusive work environment.

## B. Title VII Punitive Damages

T&B next argues insufficient evidence exists to support the jury's award of

---

[2](...continued)
377 F.3d 1106, 1116 (10th Cir. 2004).

11

punitive damages under Title VII. Punitive damages are available under Title VII if the plaintiff proves an employer engaged in intentional discrimination "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). "Malice" or "recklessness" exists if a plaintiff proves an employer discriminated "in the face of a perceived risk that its actions [would] violate federal law." Kolstad v. American Dental Assoc., 527 U.S. 526, 536 (1999).

## 1.

T&B and Marrujo first argue the district court erroneously instructed the jury on Title VII punitive damages. Specifically, T&B claims that, although the district court properly instructed the jury that it must find malice or recklessness, the court failed to instruct that T&B must have discriminated "in the face of a perceived risk that its actions [would] violate federal law." See Kolstad, 527 U.S. at 536. The Court reviews jury instructions as a whole *de novo* "to determine whether the jury may have been mislead, upholding the judgment in the absence of *substantial doubt* that the jury was fairly guided." Beaudry v. Corrections Corp. of America, 331 F.3d 1164, 1168 (10th Cir. 2003) (per curiam) (emphasis added).

Although the jury instruction in this case did not utilize the exact language from Kolstad, the jury was still "fairly guided" as to the law. The jury instruction

12

given by the court clearly required the jury to find "the acts of the defendants were with a wanton disregard of the plaintiff's rights, or that the acts were reckless, or oppressive, or maliciously intentional," in order to award punitive damages. (Jury Inst. No. 40). We can see little difference between a "wanton disregard" and a "reckless disregard" of plaintiff's rights. See Black's Law Dictionary 1093 (6th ed. 1991) (defining "wanton" as "recklessly disregardful of the rights . . . of others."). Further, we can reasonably infer that the jury assumed "plaintiff's rights" included Plaintiff's federal rights and state rights. Lastly, if the jury had any doubt as to which "rights" were in question, the jury verdict form clearly required the jury to find that T&B failed to make a good faith effort to comply with *Title VII* before imposing punitive damages.

2.

Sufficient evidence also exists to support the jury's finding that T&B acted "in the face" of a perceived risk it would violate federal law. The evidence at trial showed T&B was fully aware of Title VII's prohibitions against sexual harassment. In fact, T&B's own sexual harassment policy prohibited "unwelcome advances or propositions, verbal abuse of a sexual nature, unwelcome touching of an individual, graphic or verbal commentaries about an individual's body, sexually degrading words used to describe an individual . . ., sexually explicit or offensive jokes, or physical assault." T&B posted its sexual harassment policy on

13

bulletin boards throughout its facility.

Despite this policy, Plaintiff presented evidence showing T&B did not respond to her complaints after it became aware of serious harassment. In particular, Plaintiff testified that T&B supervisors were often "around" when Marrujo harassed her but would not do anything or report Marrujo's conduct. In fact, Roxanne Mussleman, a T&B supervisor, was working in front of Plaintiff when Marrujo pulled open Plaintiff's pants exposing her underwear to coworkers. Mussleman failed to intervene or to report the incident to anyone at T&B. Barbara Garcia also testified she complained to T&B's human resource department that Marrujo was "very hostile" towards women, but T&B failed to do anything to remedy the situation.

Plaintiff further testified she complained about Marrujo's conduct to T&B supervisors, production managers, the human resource department, and the plant manager to no avail. Although T&B's human resource department promised Plaintiff they would conduct an investigation, T&B did not conduct any credible investigation until months later. See Baty v. Willamette Indus., Inc., 172 F.3d 1232, 1245 (10th Cir. 1999) (noting Title VII punitive damages proper when "the defendant conducted a sham investigation to appease plaintiff"), *abrogated on other grounds by* Boyler v. Cordant Tech., Inc., 316 F.3d 1137 (10th Cir. 2003). Moreover, Plaintiff introduced two memoranda into evidence written by Bob

14

Romo, a T&B production supervisor, that clearly warned T&B management Marrujo's conduct was "unacceptable" and that her "continuance in [a] supervisory position would only be detrimental to our facility and to the well being of our future." (Plaintiff's Ex. 44). Despite these, and other warnings, T&B did not discipline or reprimand Marrujo. In fact, T&B apparently told Plaintiff it could not discipline Marrujo because no proof of any misconduct existed.

Based on the foregoing, and, viewing the evidence in a light most favorable to Plaintiff, a reasonable jury could have found that T&B was aware of Marrujo's conduct, failed to adequately respond to Plaintiff's complaints, and acted recklessly and with disregard for Plaintiff's federally protected rights under Title VII. Accordingly, punitive damages were appropriate.

C. Negligent Retention and Supervision

T&B argues insufficient evidence supports the jury's finding it negligently retained and supervised Marrujo under New Mexico law. "The proper standard for determining whether an employer should be held liable for negligent supervision or retention of an employee [is] . . . whether the employer knew or reasonably should have known that some harm might be caused by the acts or omissions of the employee who is entrusted with such position." Ocana v. American Furniture Co., 91 P.3d 58, 73 (N.M. 2004).

15

In this case, the jury found T&B knew or reasonably should have known of Marrujo's propensity to assault or batter employees and thus negligently retained and supervised Marrujo.[3] The evidence at trial, viewed in a light most favorable to Plaintiff, supports the jury's finding. The evidence again showed Plaintiff repeatedly complained of Marrujo's harassment to T&B management to no avail. Further, the evidence supports the inference that Plaintiff complained to Bob Romo, a T&B production supervisor, that Marrujo pulled open her shirt exposing her chest and bra *before* Marrujo pulled open Plaintiff's pants exposing her underwear. Thus, a reasonable jury could infer that T&B management knew, or at a minimum, *should have known*, of Marrujo's propensity to assault or batter employees prior to the time Marrujo battered Plaintiff by opening up her pants.

Moreover, Bob Romo clearly warned T&B in a memorandum that Marrujo posed a "major" and "detrimental" situation to the company and that Marrujo's behavior was "unruly," "unacceptable," and negatively effected other employees at T&B. (Plaintiff's Ex. 44). Although the memorandum was dated June 15, 2000, it clearly indicated that Marrujo's inappropriate behavior had been ongoing. Further, by describing the situation as "major" and "detrimental," a jury could reasonably infer that T&B knew or should have known of Marrujo's propensity to impose some type of harm, including assault and battery, on other employees.

---

[3] See discussion on assault and battery, infra at 19-20.

16

Lastly, Plaintiff testified that Roxanne Mussleman, a T&B supervisor, was working in front of Plaintiff when Marrujo pulled open her pants exposing her underwear. Thus, at a minimum, T&B became fully aware, at that moment, of Marrujo's propensity to batter employees. Nonetheless, T&B did not reprimand or discipline Marrujo. Accordingly, the jury's finding of negligent retention and supervision against T&B was supported by the evidence.[4]

### D. Punitive Damages for Negligent Retention and Supervision

T&B also argues insufficient evidence supports the jury's punitive damage award on Plaintiff's negligent retention and supervision claim. Under New Mexico law, an award of punitive damages "'is permissible upon a finding that the wrongdoer's conduct was willful, wanton, malicious, reckless, oppressive, grossly negligent, or fraudulent and in bad faith.'" Nieto v. Kapoor, 268 F.3d 1208, 1222 (10th Cir. 2001) (quoting Downs v. Garay, 742 P.2d 533 (N.M. Ct. App. 1987)). To show recklessness, a defendant must have acted intentionally "with utter indifference to the consequences of its conduct." Gonzales v.

---

[4] T&B also argues the exclusive remedy for Plaintiff's negligent retention and supervision claim lies under the New Mexico Workers' Compensation Act (WCA). See N.M.S.A. § 52-1-9. We reject this argument because the injuries arose from intentional acts related to sexual harassment. See Coates v. Wal-Mart Stores, Inc., 976 P.2d 999, 1005-06 (N.M. 1999); Delgado v. Phelps Dodge Chino, Inc., 34 P.3d 1148, 1153 (N.M. 2001).

Surgidev Corp., 899 P.2d 576, 588 (N.M. 1995).[5]

Here, the evidence was sufficient to show T&B acted recklessly. The evidence presented at trial showed T&B knew or reasonably should have known that Marrujo was capable of, among other things, physical assault and battery and intentionally failed to remedy the situation. Again, Plaintiff testified T&B supervisors were often present when Marrujo engaged in inappropriate behavior or physically assaulted her, but failed to intervene or report Marrujo. Thus, a reasonable jury could have inferred that T&B management acted with "utter indifference to the consequences of its conduct."

Further, Plaintiff testified that her efforts to complain to T&B management proved entirely futile. Plaintiff explained that "I complained about [Marrujo]. I went to Bob Romo. I went to all the supervisors that we had, every last supervisor we had." T&B, however, failed to reasonably investigate Plaintiff's complaints or discipline Marrujo. Moreover, Bob Romo, a production supervisor, expressly warned T&B that Marrujo's presence undermined the company's efforts to maintain a "safe" and "healthy" work environment and recommended that

---

[5] Both parties dispute whether "gross negligence" is a proper factor under a punitive damages analysis in New Mexico. We need not discuss this issue because sufficient evidence supports the jury's finding that T&B acted recklessly. Moreover, little, if any, difference exists between the meaning of "gross negligence" and "recklessness." See Board of County Comm'r of San Juan County v. Liberty Group, 965 F.2d 879, 884 (10th Cir. 1992) (noting gross negligence has essentially the same meaning as the term recklessness).

18

Marrujo be terminated because of her "unacceptable behavior." (Plaintiff's Ex. 14). T&B disregarded this advice. Based on the foregoing, a reasonable jury could infer that T&B's acts were taken with utter indifference to the consequences.

### E. Assault and Battery

T&B and Marrujo argue insufficient evidence exists to support the jury's separate findings of assault and battery. An assault under New Mexico law requires an act, threat, or menacing conduct which causes the plaintiff to reasonably believe she is in danger of receiving an immediate battery. See N.M.S.A. § 30-3-1; see also State v. Ortega, 827 P.2d 152, 155 (N.M. Ct. App. 1992). A battery under New Mexico law requires an unlawful, harmful, intentional, or offensive touching of another. See Ortega, 827 P.2d at 154-55.

In this case, sufficient evidence supported the jury's separate findings of assault and battery. First, the evidence showed Marrujo pulled open Plaintiff's pants which the jury could have reasonably concluded was an unlawful touching and thus a battery. See id. at 155 (noting a battery may consist of an unlawful touching of something intimately connected to the victim, such as the victim's clothes). Second, Plaintiff and others testified that Marrujo exclaimed Plaintiff's "bra is probably prettier than mine" *before* Marrujo reached over and opened Plaintiff's shirt exposing her chest and bra. Thus, a jury could have reasonably

19

inferred that Marrujo's comments about Plaintiff's bra caused Plaintiff to fear or apprehend an imminent battery, constituting a separate assault.[6]

## F. Evidentiary Issues

The Court reviews evidentiary rulings for an abuse of discretion. Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 968 (10th Cir. 2001). A district court abuses its discretion if the admission or exclusion of evidence is arbitrary, capricious, whimsical, or manifestly unreasonable. Id. Simply, a district court's evidentiary rulings must stand unless the court made a clear error of judgment. Coletti v. Cudd Pressure Control, 165 F.3d 767, 776 (10th Cir. 1999).

T&B and Marrujo raise three evidentiary issues, all of which we summarily reject. First, T&B and Marrujo argue the district court erred in admitting Plaintiff's Exhibits 14 and 44 into evidence, claiming the evidence was not

---

[6] T&B and Marrujo raise numerous arguments claiming the jury's damages awards (both compensatory and punitive) for assault and battery, negligent retention, and sexual harassment constitute impermissible double recovery. We disagree. First, our rule against double recovery only applies when a plaintiff uses alternative theories seeking the *same* relief. Mason v. Oklahoma Turnpike Auth., 115 F.3d 1442, 1459 (10th Cir. 1997). Here, the jury awarded Plaintiff different damages against two different parties for different injuries and relief. Second, as to punitive damages, we have held "multiple punitive damage awards on overlapping theories of recovery may not be duplicative at all, but may instead represent the jury's proper effort to punish and deter all the improper conduct underlying the verdict." Smith v. Diffee Ford-Lincoln-Mercury, Inc., 298 F.3d 955, 968 (10th Cir. 2002) (internal citation omitted). Lastly, the district court explicitly instructed the jury not to award duplicative damages. We presume a jury has followed the court's instructions. Youren v. Tintic School Dist., 343 F.3d 1296, 1306 (10th Cir. 2003).

20

properly authenticated, contained hearsay, was irrelevant, and was prejudicial. We discuss each in turn: (1) circumstantial evidence supports the authenticity of Exhibit 14 because T & B submitted it during discovery and it was on company letterhead.  See Denison v. Swaco Geolograph Co., 941 F.2d 1416, 1423 (10th Cir. 1991) (noting "documents provided during discovery, on defendant's letterhead, [are] authentic under Fed. R. Evid. 901") (internal citation omitted);[7] (2) Exhibits 14 and 44 do not contain hearsay because they constitute an admission by a party-opponent under Fed. R. Evid. 801(d)(2)(D);[8] (3) Both Exhibits are clearly relevant under Fed. R. Evid. 401 to Plaintiff's negligent retention and sexual harassment claims; and (4) T&B fails to explain, in any detail, how Exhibits 14 and 44 were prejudicial other then to indicate Plaintiff's counsel significantly utilized the evidence in his closing argument.  We have held that "[e]vidence is not unfairly prejudicial simply because it is damaging to an opponents case."  United States v. Martinez, 938 F.2d 1078, 1082 (10th Cir. 1991).

---

[7] T&B withdrew any objection to Plaintiff's Exhibit 44 on the basis of authenticity and stipulated that Exhibit 44 was discovered in Plaintiff's personnel file.  Accordingly, under a plain error analysis, we hold the district court's admission of the evidence did not result in "manifest injustice."  Black v. M&W Gear Co., 269 F.3d 1220, 1231 (10th Cir. 2001).

[8] We also reject T&B's argument that Exhibits 14 and 44 contain "double hearsay."  The memoranda contain only the "statements" of Bob Romo, the author, and not of anyone else.

Second, T&B and Marrujo argue the district court erred when it permitted

Barbara Garcia to testify because her testimony constituted, among other things,

improper impeachment on a collateral matter.  See Fed. R. Evid. 608(b).[9]  Rule

608(b) prohibits the use of extrinsic evidence to contradict the testimony of a

witness on a collateral matter.  Here, Garcia's testimony was not on a collateral

matter; rather, the testimony addressed a central issue at trial and was likely

relevant to show Marrujo treated women and men differently under Plaintiff's

same-sex harassment claim.

Lastly, T&B and Marrujo claim the district court erred when it permitted

Plaintiff, on direct examination, to question her own witnesses about whether they

feared retaliation from T&B.  Even assuming the district court erred in admitting

this evidence, the error did not substantially affect T&B's rights, see Coletti, 165

F.3d at 776, because: (1) the jury rejected Plaintiff's retaliation claim entirely;

and (2) sufficient evidence exists to support the jury's verdict notwithstanding the

---

[9] During direct examination, Marrujo discussed two memoranda she wrote to T&B production supervisor Bob Romo defending her conduct at work.  In one memorandum, Marrujo explained she "had the pleasure of working with . . . Barbara Garcia."  On cross-examination, Marrjuo confirmed her relationship with Garcia was "pleasant" and did not contain any sexual harassment, touching, or hostility.  After Marrujo's cross-examination, Plaintiff called Barbara Garcia as a rebuttal witness who testified that Marrujo treated men and women differently, inappropriately touched her, and was consistently hostile towards women.

disputed testimony.[10]

### III.  No. 03-2304: Attorney's Fees and Costs

T&B and Marrujo further appeal the district court's order awarding

Plaintiff $164,261.78 in attorney's fees and costs.  According to T&B, the amount

awarded represented fees associated not only with Plaintiff's successful claims

but also with those that were unsuccessful.  T&B claims the hours spent on

Plaintiff's unsuccessful claims should be excluded from any fee award because

the claims were distinct and required different legal theories and evidence.  The

Court reviews an attorney's fee award for an abuse of discretion.  Smith v.

Northwest Financial Acceptance, Inc., 129 F.3d 1408, 1418 (10th Cir. 1997).

The court, in its discretion, may award attorney's fees and costs to a

prevailing party if the fees are "reasonable."  42 U.S.C. § 2000e-5(k); see Hensley

v. Eckerhart, 461 U.S. 424, 433 & n.7 (1983).  To determine the reasonableness

of a fee request, a court must begin by calculating the so-called "lodestar amount"

---

[10] T&B and Marrujo also argue the jury verdict is against the weight of the evidence.  Generally, a jury verdict must stand unless it is "clearly, decidedly, or overwhelmingly against the weight of the evidence." Anaeme v. Diagnostek, Inc., 164 F.3d 1275, 1284 (10th Cir. 1999).  For all the reasons given, we believe ample evidence exists to support the jury verdict in this case.  Further, we reject T&B's argument it was deprived of a fair trial because the district court failed to adequately instruct the jury to disregard all of Marrujo's pre-supervisory conduct.  As stated, the district court expressly instructed the jury to disregard all of Marrujo's pre-supervisory conduct and we presume the jury followed the court's instructions.  See Youren, 343 F.3d at 1306; supra at 3 n.1.

23

of a fee.  Robinson v. City of Edmond, 160 F.3d 1275, 1281 (10th Cir. 1998).

The lodestar calculation is the product of the number of attorney hours

"reasonably expended" and a "reasonable hourly rate."  See Hensley, 461 U.S. at

433.

"The product of reasonable hours times a reasonable rate does not end the

inquiry," however, of determining whether a fee is reasonable.  Id. at 434.  A

district court may also consider a number of other factors when adjusting a fee

upward or downward, including the reasonableness of the fees in light of the

success obtained.  Id.  When a plaintiff succeeds on some claims but fails on

others, the court must consider whether to adjust the lodestar to reflect the

plaintiff's overall success level:

> The Supreme Court has instructed a fee award should be determined
> by examining "the significance of the overall relief obtained by the
> plaintiff in relation to the hours reasonably expended on the
> litigation."  Hensley, 461 U.S. at 435.  "Reasonably expended" hours
> would not include time spent on claims "unrelated" to those on which
> the plaintiff prevails.  The Hensley court held that a plaintiff cannot
> receive fees for time spent on "distinctly different claims for relief
> that are based on different facts and legal theories" and on which the
> plaintiff does not succeed.  Id. at 434-35.

Whalen v. Unit Rig, Inc., 974 F.2d 1248, 1253-54 (10th Cir. 1992).  That said, the

Supreme Court has cautioned that "where a lawsuit consists of related claims, a

plaintiff who has won *substantial relief* should not have his attorney's fee reduced

simply because the district court did not adopt each contention raised."  Hensley,

461 U.S. at 440 (emphasis added). The critical issue, then, is whether the unsuccessful claims were "related claims" or "distinct in *all* respects" from the successful claims. Smith, 129 F.3d at 1418 (emphasis added).

In this case, the district court did not abuse its discretion in awarding attorney's fees and costs to Plaintiff. In determining the hours reasonably expended, the district court carefully established what each attorney charged, details of the work, and the reasonable fee Plaintiff should receive. In some instances, the district court reduced the hours charged because the description of the work performed was vague or duplicative. The court then properly determined that the fees were reasonable in light of the success obtained. We agree.

The Supreme Court has stated that "partial success" might lead to reducing a fee award if the unsuccessful claims were "distinct" or unrelated to the successful claims. Hensley, 461 U.S. at 440. Here, Plaintiff's suit derived out of a common core of facts and interrelated legal theories. Our analysis in Smith, 129 F.3d 1408, is illustrative. There, the plaintiff brought, among others, a Title VII sexual harassment hostile work environment claim, constructive discharge claim, and a tort claim against her former employer. Id. at 1419. The plaintiff only succeeded on her Title VII claim. We rejected the defendant's argument that fees were not proper for time spent on the unsuccessful claims because all the claims

were "intimately related to the Title VII hostile work environment claim on which Plaintiff prevailed," and based on a "common core of facts." Id. (citing Hensley, 461 U.S. at 435). Similarly in this case, Plaintiff's legal theories were intimately related to her Title VII sexual harassment claim and were based on a "common core of facts." Moreover, Plaintiff "substantially prevailed" because the jury returned a verdict in her favor not only on her Title VII claims, but also on her negligent retention, assault, and battery claims. Therefore, the district court did not abuse its discretion in awarding Plaintiff her attorney's fees and costs.

**IV. No. 03-2274: Plaintiff's Cross-Appeal**

Plaintiff cross-appeals, arguing the district court erred in granting T&B summary judgment on her FMLA claim. Plaintiff argues she established a prima facie FMLA retaliation claim and demonstrated genuine issues of fact existed on whether T&B's reason for terminating her was pretext for discrimination. We review the district court's grant of summary judgment *de novo*, applying the same standard as the district court. Thom v. Bristol-Myers Squibb, 353 F.3d 848, 851 (10th Cir. 2003).

The FMLA provides that employers must provide eligible employees up to twelve weeks leave for purposes enumerated in the Act. 29 U.S.C. § 2612(a)(1)(D). To establish a prima facie FMLA retaliation claim, a plaintiff must show that (1) she availed herself of a protected right under the FMLA,

26

(2) an employment decision adversely affected her, and (3) a causal connection between the two actions exists. Morgan v. Hilti, Inc., 108 F.3d 1319, 1325 (10th Cir. 1997). Once a prima facie case of discrimination is established, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for plaintiff's termination. If the defendant can do so, the burden shifts back to the plaintiff to produce evidence the employer's reason is a pretext for the retaliatory reason. Id. "A plaintiff can demonstrate pretext by showing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's reasons for its action, which a reasonable fact finder could rationally find unworthy of credence." Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir. 1997).

In this case, the district court did not err in granting T&B summary judgment on Plaintiff's FMLA claim. We assume Plaintiff established a prima facie FMLA claim. T&B, however, claims it terminated Plaintiff for a nondiscriminatory reason; namely, because she violated its no-show policy. The policy provides that employees may be terminated if they fail to call or are absent without notice for three or more consecutive workdays. According to T&B, it informed Plaintiff she needed to submit her FMLA forms no later then April 30, 2001 in order to properly extend her employment leave. Plaintiff, however, did not contact T&B until May 7, 2001 and failed to submit her FMLA forms until

27

May 8, 2001. Thus, Plaintiff was absent for three or more consecutive work days and was terminated accordingly.

Plaintiff failed to show T&B's proffered reason for her termination was pretext for discrimination. Plaintiff testified at her deposition that she was fully aware of T&B's policy stating employees who fail to report to work or call-in for three days may be terminated. Plaintiff admitted T&B told her to turn in her FMLA paperwork by April 30, 2001. Plaintiff, however, did not contact T&B until May 7, 2001 and did not submit her FMLA paperwork until May 8, 2001. Thus, Plaintiff did not call or contact T&B for roughly six days.[11] Further, Plaintiff admitted T&B terminated her because she violated its three-day no-show policy. In the end, Plaintiff fails to show a reasonable fact finder would find T&B's proffered reason for termination "unworthy of credence." Richmond, 120

---

[11] Plaintiff suggests T&B terminated her one day earlier then it should have. According to Plaintiff, her FMLA paperwork was not due until April 30, 2001 (which presumably means the end of business day on April 30, 2001) and that T&B terminated her on May 2, 2001. Thus, T&B terminated her after two days, not three. We reject Plaintiff's argument because she admits she did not contact T&B until May 7, 2000. Whether T&B should have waited until May 3, 2001 to terminate Plaintiff does not change the fact that she would have still been in violation of T&B's three-day no-show policy. Further, Plaintiff argues her FMLA paperwork stated she should turn in her forms "as soon as practicable" in cases of "medical emergency or unforeseen circumstances." Plaintiff, however, failed to present evidence she suffered from any medical condition prohibiting her from returning the forms in time and admitted she was able to drive and "get up and out of the house."

F.3d at 209.[12]

## VI. Conclusion

Based on the foregoing, the district court's (1) denial of T&B's motion for judgment as a matter of law; (2) denial of T&B's motion for new trial; (3) grant of Plaintiff's motion for attorney's fees and costs; and (4) grant of T&B's motion for summary judgment on Plaintiff's FMLA claim are

AFFIRMED.

---

[12] Plaintiff raises a second argument in her cross-appeal regarding evidence it should be allowed to submit if we reverse for a new trial. Plaintiff's arguments are moot in light of our holding in this case.