**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 14, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

TY K. LEYLAND,

     Defendant - Appellant.

No. 05-4212
(D.C. No. 2:04-CR-00001-PGC)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **EBEL**, and **TYMKOVICH**, Circuit Judges.

Defendant-Appellant Ty Leyland appeals his 151-month sentence imposed based on his convictions for various counts surrounding the operation of a methamphetamine laboratory. Having jurisdiction under 28 U.S.C. § 1291, we AFFIRM.

---

[*] After examining appellant's brief and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This Order and Judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

**BACKGROUND**

Following an investigation into iodine purchases in Salt Lake City, Utah, officers obtained a warrant to search Mr. Leyland's home. Their search uncovered various items associated with a methamphetamine laboratory, including 15 grams of pseudoephedrine, 110 grams of red phosphorus, and 113.4 grams of iodine. Mr. Leyland was charged in a four-count indictment with attempted manufacture of methamphetamine (count 1) and possession of certain precursor chemicals— pseudoephedrine, phosphorus, and iodine—with the intent to manufacture methamphetamine (counts 2-4).

At trial, officer Tyler Boelter, an expert in clandestine methamphetamine labs, testified to the conversion of the precursor chemicals into methamphetamine. Boelter specifically stated that "[r]ed phosphorus will actually convert on a one-to-one ratio to methamphetamine, so for 110 grams of red phosphorus you can actually produce 110 grams of actual methamphetamine."[1]

Following Mr. Leyland's conviction by a jury on all counts, a presentence report ("PSR") was prepared. Where, as here, there is no actual drug seizure, the Sentencing Guidelines allow the court to "approximate the quantity of the controlled substance." See United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1 cmt. n.12. Based on a 1:1 conversion ratio between red phosphorus and

---

[1] "Actual" methamphetamine refers to 100% pure methamphetamine.

actual methamphetamine, the PSR stated that the 110 grams of red phosphorus recovered during the search equated 110 grams of actual methamphetamine.[2] The PSR thus recommended a base offense level of 32. U.S.S.G. § 2D1.1(c)(4) (level 32 if the offense involved "at least 50 G but less than 150 G of Methamphetamine (actual)").[3] Combined with an additional 2-level enhancement for transportation of a hazardous waste and a criminal history score of zero, the PSR calculated Mr. Leyland's sentencing range to be 151 to 188 months.

Mr. Leyland raised several objections to the PSR, including an objection "as a factual and legal matter" to the conversion factors used. Specifically, Mr. Leyland argued that the conversion rates were not found in the Guidelines and thus should not have been used in the offense level computation. The response to this objection was that "the conversion is determined by accepted practices in the District of Utah and determined by the testimony in previous cases."

---

[2] The PSR also stated that the 15 grams of pseudoephedrine converted at a 2:1 ratio to 7.5 grams of actual methamphetamine, and that the 113.4 grams of iodine converted at a 3:1 ratio to 34.4 grams of actual methamphetamine. The red phosphorus amount was used in the computation of Mr. Leyland's base offense level pursuant to § 2D1.11 of the guidelines. See U.S.S.G. § 2D1.11 cmt. n.4(A) ("[I]f the offense involves two or more chemicals, use the quantity of the single chemical that results in the greatest offense level.")

[3] Generally, the guidelines range for possession of certain precursor chemicals is determined pursuant to § 2D1.11, which provides for base offense levels based on the amount of the precursor chemicals alone. However, § 2D1.1, which provides for base offense levels based on the amount of narcotics involved, is applied when the offense in question is attempted manufacture and that section yields a higher offense level. U.S.S.G. § 2D1.11(c)(1).

At sentencing, the district court found that the conversion rate and thus the quantity of drugs involved had been established by a preponderance of the evidence. Considering the Guidelines as advisory, and considering all of the factors articulated in 18 U.S.C. § 3553(a), the court sentenced Mr. Leyland to 151 months, "grouped" for counts 1, 2, 3, and 4.

## DISCUSSION

### I.

Mr. Leyland's first argument is that the district court erred when it relied on Officer Boelter's trial testimony regarding the conversion ratio between red phosphorus and methamphetamine to calculate the drug quantities that formed the basis for Mr. Leyland's sentencing range. Mr. Leyland's specific objection is that Officer Boelter is not sufficiently qualified to testify as to the conversion ratio; "Officer Boelter is an expert in clandestine methamphetamine laboratories; but a chemist he is not." See United States v. Dalton, 409 F.3d 1247, 1251 (10th Cir. 2005) ("When the actual drugs underlying a drug quantity determination are not seized, the trial court may rely upon an estimate to establish the defendant's guideline offense level so long as the information relied upon has some basis of support in the facts of the particular case and bears sufficient indicia of reliability.") (quotations omitted) (emphasis added).[4]

---

[4] Mr. Leyland contends that the district court should have instead calculated drug quantities using the marijuana equivalency table contained in the sentencing
(continued...)

As a threshold matter, the government argues that Mr. Leyland did not preserve his objection to the court's method of determining drug quantity below, and thus we should review this issue only for plain error. See United States v. Tisdale, 248 F.3d 964, 975 (10th Cir. 2001) (noting that where a party "fails to lodge a specific objection with the district court to its interpretation or application of the sentencing guidelines," we review only for plain error). Mr. Leyland counters that, although his objection was "not the model of specificity," he sufficiently preserved the issue by contending that the conversion rate and conclusion as to quantity were, as a factual and legal matter, incorrect. Having reviewed the proceedings below, we agree with the government that plain error review is appropriate.

No objection was raised when Officer Boelter testified at trial to the conversion ratio. However, in response to the PSR's statement that the 110 grams of red phosphorus converted to 110 grams of methamphetamine Mr. Leyland objected

> as a factual and legal matter to the inclusion in the PSR . . . of the "conversion factors" to methamphetamine (actual) of 50% for pseudoephedrine, 100% for phosphorus and 33% for Iodine. These conversion rates are not found in the Federal Sentencing guidelines and therefore should not be used in the computations of Base Guidelines under them. Further, each of these conversion rates, as used in the PSR

---

[4](...continued)
guidelines. Such a calculation, Mr. Leyland claims, would have led to an advisory guidelines range of 78-97 months, rather than the 151-188 months determined by the district court.

herein, is clearly a fact, which were [sic] not admitted by the defendant in a guilty plea or a guilty verdict by a jury. To be used by the Court for sentencing under the guidelines, the conversion rates must be admitted by the defendant or proved to a jury beyond a reasonable doubt.

The Court's inclusion of the alleged weights, amounts and/or quantities of the pseudoephedrine, phosphorus and iodine an/or [sic] the conversion rates in the PSR or for purposes of application of the Federal Sentencing Guidelines would violate the defendant's rights under the Sixth Amendment of the United States Constitution.

The defendant agrees with the PSR that "Pursuant to U.S.S.G. Section 2D1.11 Note A, "to calculate the base level in an offense that involves two or more chemicals, use the quantity of the single chemical that results in the greatest level, regardless of whether the chemicals are set forth in different tables or in different categories.

The defendant, however, does object to the use of . . . Section 2D1.1(3)(c)(4) to provide the base offense level in this case. The defendant has heretofore asserted that because the jury in this case did not find beyond a reasonable doubt the weight, amount and/or quantity of the List I and List [sic] Chemicals that the defendant was found guilty of possessing in Counts Two, Three and Four, and the jury did not find beyond a reasonable doubt the conversion factors for those chemicals all as required by the Sixth Amendment of the Constitution of the United States, as argued above, that the weight, amount and/or quantity of those chemicals may not be used by the Court in computing the offense guidelines.

(Emphasis added.)

It is not clear from this argument whether Mr. Leyland's objection related only to judge fact-finding (a claim not at issue here), or whether Mr. Leyland was also raising an objection to the methodology and evidence used to calculate the quantities (i.e., reliance on Officer Boelter's testimony for the conversion ratio; the claim that is at issue here). However, at sentencing, Mr. Leyland clarified any

ambiguity and made plain that he objected only to the court, rather than the jury, finding the drug quantities:

> THE COURT: It looks to me like the main objection is a question of converting pseudoephedrine into methamphetamine.[5] And let me ask, it is the government's burden to show some kind of a conversion factor appropriate conversion and so forth. How is – how is the government planning to proceed on that issue?
>
> MS. TAYLOR [counsel for the government]: Well, Your Honor, that was the evidence that was introduced at trial from the officer who testified in this matter. And all of the numbers that are provided in the presentence report are the numbers that he testified to on the stand. My understanding from the memorandum submitted by defense counsel was that not necessarily that he had objected to those numbers being used, but that he objected on the grounds that those – those numbers were not found by a jury. And quite frankly, I don't think under Booker[6] and under the sentencing guidelines the way it is now structured, I don't think that the jury needs to make a finding of how much methamphetamine he actually intended to manufacture.
>
> THE COURT: It has been a while since we have done this case. Did the officer testify that you could convert 110 grams of phosphorus into a [sic] 110 grams of actual methamphetamine?
>
> MS. TAYLOR: He did.
>
> THE COURT: All right. Let me hear from [defense counsel]. Wouldn't that be enough?
>
> MR. BOWN [counsel for defendant]: Well, Your Honor, I don't recall that as being raised at the time of trial. If it has, certainly I stand corrected. However, we have objected both as a factual and a legal matter to the inclusion of the weights, amounts, quantities of these

---

[5] The parties agree that the district court misspoke in referring to pseudoephedrine instead of red phosphorus.

[6] United States v. Booker, 543 U.S. 220 (2005).

particular drugs. Because under the Blakely,[7] Booker, Fen Fen [sic],[8] Lynch[9] decisions, those must be actually found and returned by a jury before they can be considered as a –

Court: That is not right.

(Emphases and footnotes added.) Further, after defense counsel made arguments concerning whether the jury (rather than the judge) had to make findings as to weights and quantities, the district court clarified Mr. Leyland's objection:

> THE COURT: All right. And that is – your objections are on the drug quantity and the gun and the transporting of hazardous waste, that is the lack of a jury finding on each of those three?
>
> MR. BOWN: Yes. Those are my objections, yes, they are . . . .

These colloquies make clear that Mr. Leyland's argument about the "factual and legal" error regarding the conversion rates went to the issue of jury fact-finding, not to the actual facts found or the way the Guidelines were applied. While objections below need not be "model[s] of specificity," counsel must still "sufficiently raise[] the issue" in order to preserve it for appeal. Tisdale, 248 F.3d at 976. We therefore review the claim that the court erred in relying on Officer Boelter's testimony to establish the conversion ratio and thus the drug

---

[7] Blakely v. Washington, 542 U.S. 296 (2004).

[8] United States v. Fanfan was consolidated with United States v. Booker. See Booker, 543 U.S. at 220.

[9] United States v. Lynch, 397 F.3d 1270 (10th Cir. 2005).

- 8 -

quantities for plain error.[10] Under this standard of review, "before an appellate

court can correct an error not raised at trial, there must be (1) 'error,' (2) that is

'plain,' and (3) that 'affects substantial rights.'" Johnson v. United States, 520

U.S. 461, 466-67 (1997) (quoting United States v. Olano, 507 U.S. 725, 732

(1993)) (alteration omitted). "If all three conditions are met, an appellate court

may then exercise its discretion to notice a forfeited error, but only if (4) the error

"[]seriously affects the fairness, integrity, or public reputation of judicial

proceedings.[]" Id. (quoting Olano, 507 U.S. at 732) (alteration omitted).[11]

---

[10] Alternatively, even assuming Mr. Leyland's objection to the PSR did raise a proper objection based the district court's reliance on Officer Boelter's testimony to establish the conversion ratio, such an objection was withdrawn at sentencing. In response to the court's question about what Mr. Leyland's objections to the drug quantities were, counsel made it clear that he was contending only that there was a problem with the jury not having found the quantities. We review withdrawn objections, as well as those never made, for plain error. See Chavez v. Thomas & Betts Corp., 396 F.3d 1088, 1101 n.7 (10th Cir. 2005).

[11] The government argues that the issue of the district court's reliance on Officer Boetler's testimony is an issue of fact, and thus no plain error occurred. See United States v. Svacina, 137 F.3d 1179, 1187 (10th Cir. 1998) ("[F]actual disputes not brought to the attention of the court do not rise to the level of plain error."). Mr. Leyland, on the other hand, characterizes this issue as a question of law. Specifically, he argues that a witness who is not proffered as a chemical expert and who only briefly mentioned (with no explanation) that the conversion ratio was 1:1 does not, as a matter of law, provide the "sufficient indicia of reliability" necessary to allow the district court to rely on his testimony. Dalton, 409 F.3d at 1251.
    We need not decide this issue, because even assuming this was an issue of law for which we would undertake the Johnson/Olano four-prong plain-error review, Mr. Leyland's claim fails.

Assuming that Mr. Leyland could satisfy the first three prongs, we conclude that he cannot satisfy the fourth. See United States v. Gonzalez Edeza, 359 F.3d 1246, 1250-51 (10th Cir. 2004) (not resolving whether the first three prongs of plain error review were met because the defendant failed to establish the fourth prong). Here, Officer Boelter's testimony as to the conversion ratio stands unrebutted. Further, there was additional evidence that Mr. Leyland was involved with substantial quantities of methamphetamine—an associate of Mr. Leyland testified that he "cooked" two to eight ounces[12] of methamphetamine "once or maybe twice a week" for a period of time. And the district court, in imposing his sentence, noted that its drug quantity determination of only 110 grams of actual methamphetamine "is a conservative estimate since it assumes, contrary to common sense, that th[e time Mr. Leyland's garage was raided and the precursor chemicals were discovered] was the only time that this laboratory was used at all. And common sense would suggest that it was used on other occasions." Given this, we simply cannot conclude that leaving any potential error uncorrected would result in "manifest injustice." Morales-Fernandez v. I.N.S., 418 F.3d 1116, 1120 (10th Cir. 2005); see also United States v. Wallace, 429 F.3d 969, 977 (10th Cir. 2005) (noting that our discretion to correct forfeited errors "should be used sparingly and only in those circumstances in which a miscarriage of justice would otherwise result.") (quotations omitted).

---

[12] One ounce equals approximately 28.35 grams.

**II.**

Mr. Leyland also contends that the district court's imposition of a 151 month total sentence "grouped for counts 1s, 2s, 3s, 4s," was illegal because count 4—possession of iodine with intent to manufacture methamphetamine—carries a statutory maximum sentence of 10 years (120 months). 21 U.S.C. §§ 802(35)(I) & 841(c). On this claim, the parties concede that no objection was raised below and thus that plain error review is warranted.

Here, even assuming the first two prongs of the plain error test are met, Mr. Leyland has not shown how the "grouping" of the counts affected his substantial rights. Mr. Leyland acknowledges that the other three counts—for which we was also convicted—carry a statutory maximum of 20 years. Had the district court specifically imposed 151-month sentences on those three counts and a concurrent 120-month sentence on the fourth count, there would have been no change in the actual 151-month sentence Mr. Leyland received. See U.S.S.G. § 5G1.2 cmt. n.1 ("The combined length of the sentences ("total punishment") is determined by the court after determining the adjusted combined offense level and the Criminal History Category. . . . [T]he total punishment is to be imposed on each count and the sentences on all counts are to be imposed to run concurrently to the extent allowed by the statutory maximum sentence of imprisonment for each count of

conviction."). As Mr. Leyland has offered no explanation as to how the form of sentencing affected his substantial rights,[13] we find that no plain error occurred.

## CONCLUSION

For the foregoing reasons, we AFFIRM.


ENTERED FOR THE COURT


David M. Ebel
Circuit Judge

---

[13] Mr. Leyland argues only that "a sentence greater than the statutory maximum, on its face, affects his substantial rights."